IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-142

 No. 506A20

 Filed 5 November 2021

 IN THE MATTER OF: N.K.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 2

 October 2020 by Judge April C. Wood in District Court, Davie County. This matter

 was calendared for argument in the Supreme Court on 30 September 2021 but

 determined on the record and briefs without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 Holly M. Groce for petitioner-appellee Davie County Department of Social
 Services.

 Kip David Nelson for appellee Guardian ad Litem.

 Peter Wood for respondent-appellant mother.

 BERGER, Justice.

¶1 Respondent appeals from an order terminating her parental rights1 to N.K.

 (Nancy),2 born in September 2016. Counsel for respondent filed a no-merit brief

 pursuant to Rule 3.1(e) of the North Carolina Rules of Appellate Procedure.

¶2 On November 2, 2016, the Davie County Department of Social Services (DSS)

 1 The trial court also terminated the parental rights of Nancy’s father; however, he

 did not appeal and is not a party to this proceeding.
 2 Pseudonyms are used in this opinion to protect the juvenile’s identity and for ease of

 reading.
 IN RE N.K.

 2021-NCSC-142

 Opinion of the Court

 filed a petition alleging that Nancy was a neglected and dependent juvenile, and DSS

 obtained a nonsecure custody order. The petition alleged that Nancy’s older half-

 sibling, Carl, was assaulted by a family friend in Nancy’s presence, and respondent

 did not intervene or stop the attack.

¶3 In a subsequent interview with Carl, DSS noted bruising and marks on Carl’s

 body, including his back, face, neck, arms, side, and legs. Carl disclosed that the

 family friend, who often acted as a caretaker for him and Nancy, regularly hit him

 with a belt and that respondent had hit him on the legs with a tire iron. Respondent

 denied any knowledge of how Carl obtained the marks on his body, though she

 acknowledged the family friend often supervised him. Additional information was

 provided that Nancy was exposed to threats by her father, and drug use and other

 acts of domestic violence by respondent. Respondent, the children’s father, and the

 family friend were arrested on charges related to the assaults on Carl.

¶4 Respondent entered into a case plan with DSS on November 8, 2016. The case

 plan required her to communicate regularly with DSS and attend, complete, and

 follow any necessary recommendations from a substance abuse assessment, a

 psychological evaluation, and separate parenting assessments. In addition,

 respondent was required to provide proof of employment and income, proof of current

 residence and stability in maintaining that residence, proof of a job search if she

 became unemployed, and proof of reliable transportation.
 IN RE N.K.

 2021-NCSC-142

 Opinion of the Court

¶5 Following an adjudication hearing, the trial court entered an order on

 December 21, 2016, concluding that Nancy was a neglected juvenile. In an

 accompanying disposition order, the trial court ordered respondent to comply with

 her case plan by completing a psychological evaluation, completing a parenting

 assessment, completing a substance abuse assessment, and complying with any

 recommendations. The court also ordered that Nancy remain in DSS custody and

 authorized twice-weekly supervised visitation.

¶6 After the initial permanency-planning hearing, the trial court entered an order

 on March 13, 2017, establishing a primary permanent plan of reunification with a

 concurrent plan of guardianship with a court-approved caretaker. In light of

 respondent’s lack of progress with the requirements of her case plan and an increase

 in substance abuse and domestic violence, the trial court changed the primary

 permanent plan to adoption with a secondary plan of reunification. Nancy was moved

 to a potential adoptive placement following that permanency-planning hearing.

¶7 Due to respondent’s continued failure to make “any significant progress”

 toward her case plan requirements, the trial court changed the secondary plan to

 guardianship, and, in a January 27, 2020 permanency-planning order, relieved DSS

 of continued reunification efforts. The trial court also directed DSS to file a petition
 IN RE N.K.

 2021-NCSC-142

 Opinion of the Court

 to terminate respondent’s parental rights.3

¶8 On April 8, 2020, DSS filed a second petition to terminate respondent’s

 parental rights on the grounds of neglect, willfully leaving Nancy in foster care for

 more than twelve months without a showing of reasonable progress, and respondent

 having her parental rights to another child terminated. See N.C.G.S. § 7B-

 1111(a)(1)–(2), (9) (2019). Following a hearing , the trial court entered an order on

 October 2, 2020, terminating respondent’s parental rights. The trial court concluded

 grounds existed to terminate her parental rights based on the grounds of neglect and

 willful failure to make reasonable progress.4 The trial court made findings of

 respondent’s continued substance abuse, positive drug screens up to the month of the

 termination hearing, and issues with domestic violence that resulted in her

 incarceration at the time of the hearing. Further, the trial court found respondent

 had failed to make any progress on the requirements of her case plan. The trial court

 concluded it was in Nancy’s best interests that respondent’s parental rights be

 terminated. See N.C.G.S. § 7B-1110(a) (2019). Respondent appeals.

 3 DSS previously filed a petition to terminate respondent’s parental rights on
 November 14, 2018, on the grounds of neglect and willfully leaving Nancy in foster care for
 more than twelve months without a showing of reasonable progress, See N.C.G.S. § 7B-
 1111(a)(1)–(2) (2019). However, the trial court dismissed that petition upon concluding DSS
 had failed to present sufficient evidence that grounds existed to terminate respondent’s
 parental rights.
 4 The trial court did not conclude grounds existed to respondent’s parental under

 N.C.G.S. § 7B-1111(a)(9) because respondent appealed the termination order related to that
 child and the matter was pending at the Court of Appeals.
 IN RE N.K.

 2021-NCSC-142

 Opinion of the Court

¶9 Counsel for respondent filed a no-merit brief on his client’s behalf under Rule

 3.1(e) of the Rules of Appellate Procedure. Counsel identified three issues that could

 arguably support an appeal but also explained why he believed these issues lacked

 merit. Counsel advised respondent of her right to file pro se written arguments on

 her own behalf and provided her with the documents necessary to do so. Respondent

 has not submitted written arguments to this Court.

¶ 10 We independently review issues identified by counsel in a no-merit brief filed

 pursuant to Rule 3.1(e). In re L.E.M., 372 N.C. 396, 402, 831 S.E.2d 341, 345 (2019).

 After considering the entire record and reviewing the issues identified in the no-merit

 brief, we conclude that the order terminating respondent’s parental rights is

 supported by clear, cogent, and convincing evidence and is based on proper legal

 grounds. Accordingly, we affirm the order of the trial court.

 AFFIRMED.